IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REBECCA A. RIGGS                                        PLAINTIFF

V.                                  NO. 09-5241

MICHAEL J. ASTRUE,
Commissioner of Social Security                        DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Rebecca A. Riggs, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

**I.  Procedural Background:**

Plaintiff filed her application for DIB on March 6, 2007, alleging an inability to work since August 30, 2006, due to a back injury, asthma, depression, human papillomavirus (hpv), and scoliosis. (Tr. 48, 51, 133-142, 193).  An administrative hearing was held on April 14, 2009, at which Plaintiff appeared with counsel and testified.  (Tr. 43-81).

By written decision dated May 13, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe.  (Tr. 32). Specifically, the ALJ found Plaintiff had the following severe impairments;  degenerative disc disease of the lumbar spine and arthritis of the sacroiliac joint (SI) joint; chronic obstructive

-1-

pulmonary disease (COPD) and/or emphysema;  insomnia;  and adjustment disorder with mixed

anxiety and depressed mood, a somatization disorder,[1] and a histrionic[2] and paranoid personality

disorder.  (Tr. 32-33).  However, after reviewing all of the evidence presented, she determined

that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed

in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 34).  The

ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except that:  she can sit a total of six hours in an 8-hour workday; she can stand and/or walk a total of two hours in an 8-hour workday, 30 minutes at a time; she can frequently lift and/or carry five pounds; she can occasionally lift and/or carry 10 pounds;  she should avoid climbing and/or exposure to significant unprotected heights;  she should avoid potentially dangerous, unguarded moving machinery;  she should do no commercial driving; she should avoid exposure to uneven surfaces;  she should avoid exposure to vibration;  she should alternate sitting and standing every 30 minutes without leaving her workstation; she should work in areas with climate control and that are reasonably free of environmental irritants;  she should have access to inhalers, as necessary;  she is limited to simple repetitive (1, 2, 3 steps) type job instructions;  she should have no public contact or customer service duties; and she should have no more than minimal contact with co-workers and/or supervisors with no teamwork duties but proximity is acceptable.

(Tr. 36).  With the help of a vocational expert, the ALJ determined that Plaintiff was unable to

perform any past relevant work, but that there were jobs that Plaintiff would be able to perform,

such as hand packager and final assembler.  (Tr. 40).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on August 26, 2009.  (Tr. 103).  Subsequently, Plaintiff filed this action.

(Doc. 1).  This case is before the undersigned pursuant to the consent of the parties.  (Doc. 8).

---

[1]Somatization - In psychiatry, the conversion of mental experiences or states into bodily symptoms.  Dorland's Illustrated Medical Dictionary 1759 (31st ed. 2007).

[2]Histrionic - Excessively dramatic or emotional; of or relating to the behavioral characteristics of histrionic personality disorder.  Id. at 876.

Both parties have filed appeal briefs, and the case is now ready for decision.  (Doc. 17, 19, 22).

## II.  Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that her disability, not simply her impairment, has lasted for

-3-

at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III. Discussion:**

Of particular concern to the undersigned is the analysis given by the ALJ of Plaintiff's mental impairment.  On March 1, 2007, Plaintiff was seen at Burrell Behavioral Health, where a Universal Referral/Screening Form - Adult was completed.  The diagnosis was reported as follows:

| | |
|---|---|
| Axis 1 | Dysthymia[3] |
| Axis II | no dx |
| Axis III | back trouble/HPV(human papillomavirus) virus/by report |
| Axis IV | 11.33. |
| Axis V | 58 |

(Tr. 362).  Plaintiff was reported as taking Prioxicam/Flexeril/Norco and needing psychiatric

---

[3]Dysthymia - Dysthymic disorder
Dysthymic - Characterized by symptoms of mild depression, as in dysthymic disorder.  Id. at 590.

-4-

evaluation and medication management.  (Tr. 363).  The onset of illness was reported as 2001, and Plaintiff was reported as meeting the criteria for acute "psy condition."  (Tr. 363).

On April 19, 2007, a Psychiatric Review Technique form was filled out by Dr. Kenneth Burstin.   (Tr. 377-387).  It was reported that Plaintiff stopped taking her Lexapro in 2005 because she did not think she needed it.  (Tr. 387).  Dr. Burstin reported that Plaintiff did not send in her "adl/3369" forms to assess limitations due to her allegations, and accordingly found that the evidence did not itself establish a disabling impairment and that Plaintiff failed to provide functional evidence.  The claim was therefore denied for insufficient evidence.  (Tr. 387).

On November 24, 2008, a Medical Source Statement - Mental - was completed by Dr. Robert Gladden, of Successful Living, Inc.  (Tr. 466-469).  Plaintiff received counseling from Dr. Gladden from September 8, 2008, to the date of the hearing, when she was reported as still receiving counseling from him.  She saw Dr. Gladden on a regular basis.  (Tr. 67).  In his Medical Source Statement, Dr. Gladden diagnosed Plaintiff with Adjustment Disorder with Mixed Anxiety and Depressed Mood, and reported her prognosis as "Fair."  (Tr. 466).  Dr. Gladden found that Plaintiff was markedly limited in two categories: 1) in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and 2) in her ability to respond appropriately to changes in the work setting.  (Tr. 467-468).  Dr. Gladden noted that Plaintiff was not a malingerer, and that she was likely to be absent from work as a result of her symptoms more than four days per month.  (Tr. 469).  He also found that Plaintiff had a life history of capable work ethics, but that recent issues created psychological, physical, and emotional disorders.  (Tr. 469).

On April 7, 2009, a Psychological Evaluation was performed by Sharol L. McGehee, Psy.D. (Tr. 542-554). In her evaluation, Dr. McGehee stated that Plaintiff would have difficulty getting along with coworkers, would probably be distracting to coworkers with her complaints, and that her skills of adaptation were moderately limited. (Tr. 544). She also stated that Plaintiff would likely be absent from work at least four days a month. (Tr. 544). She diagnosed Plaintiff with:

Axis I - Major Depressive Disorder, severe without psychotic features; Somatoform Disorder;

Axis II - deferred

Axis III - Multiple injuries from lifting patients and a fall 1999, bone spurs in right hip, degenerative disc disease, scoliosis with chronic pain, recurring cervical cancer, and HPV.

Axis IV - Problems with primary support system - daughter from rape, sexual and physical abuse of that daughter with second husband w[sic] now in prison, daughter in Milano House for behavioral problems, sexual abuse by uncle at age 12, disbelief by mother

Occupational problems - unemployed

Economic problems - no income

Problems with access to health care - lack of funds to pay for needed health care; and

Axis V - Current GAF: 31 (psych only).

(Tr. 544).

Also on April 8, 2009, Dr. McGehee completed a Medical Source Statement, wherein she indicated that Plaintiff was markedly limited in three categories: 1) in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 2) in her ability to complete a normal workday and work week without interruption from psychologically based symptoms, and in her ability to perform at a consistent pace without an unreasonable number and length of rest periods; and 3) in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 538-539).

Dr. McGehee also reported that Plaintiff was likely to be absent from work more than four days per month.

In her decision, the ALJ acknowledged that the medical records by Dr. Gladden were not the opinions of an acceptable medical source, but was the opinion of "other sources" under 20 CFR 404.1513 and 416.913(d).[4]  She further stated that although Dr. Gladden was not a "qualified medical source," as a licensed mental health counselor, he was in a treating relationship and "is in the best position to know and evaluate the claimant's ongoing mental capacity and limitations."[5]  (Tr. 38).  She continued:

> Dr. McGehee also completed a MSS - Mental opining that the claimant had markedly limited functional capacity in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Ex. 19F).  However, the undersigned notes that Dr. McGehee based her opinion upon a one time evaluation, Dr.

---

[4]20 CFR § 404.1513(a) and (d) provide, in pertinent part:
(a) *Sources who can provide evidence to establish an impairment.*  We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s).  See § 404.1508.  Acceptable medical sources are----
      (1) Licensed physicians (medical or osteopathic doctors);
      (2) Licensed or certified psychologists.  Included are school psychologists, or other licensed or certified individuals with other titles who perform the same function as a school psychologist in a school setting, for purposes of establishing mental retardation, learning disabilities, and borderline intellectual functioning only;
      ...
(d) *Other sources.*  In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.  Other sources include, but are not limited to —
      (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists);
      (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers);
      (3) Public and private social welfare agency personnel; and
      (4) Other non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).

[5]Dr. Robert Gladden, Ed.D., L.P.C. is a doctor of education and licensed professional counselor.  Dr. Sharol McGehee, is a doctor of psychology

McGehee apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exists good reasons for questioning the reliability of the claimant's subjective complaints.

In sum, the above residual functional capacity assessment is supported by Dr. McGehee's long term treatment relationship with the claimant.

(Tr. 38-39).

It is difficult to determine how much weight the ALJ gave to Dr. Gladden's opinion. She recognized that he had a treating relationship with Plaintiff, but then appears to have given no weight to Dr. Gladden's findings of Plaintiff's marked limitations in her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and her ability to respond appropriately to changes in the work setting. Although Dr. Gladden may not be considered an acceptable medical source under 20 C.F.R. § 404.1513(a), evidence from Dr. Gladden may provide insight into the severity of her impairment and how it affects her ability to function. Sloan v. Astrue, 499 F.3d 883, 888 (8th Cir. 2007); Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003); see McGlothlin v. Astrue, 310 Fed. Appx. 946, 948 (8th Cir. 2009) citing 20 C.F.R. § 416.913(d)(1)(applying this principle to chiropractors).

The ALJ appeared to give little weight, if any, to Dr. McGehee's findings of Plaintiff's marked limitations because her opinion was based upon a one time evaluation. Additionally, it seems that the ALJ confused the two providers, referring to Dr. McGehee's "long term treatment relationship with the claimant" when in fact, she no doubt meant to say Dr. Gladden's long term treatment relationship with the claimant.

The Court also believes the ALJ made inconsistent statements regarding Dr. McGehee's opinion. In her decision, the ALJ stated that in social functioning, Plaintiff had moderate difficulties, and that Dr. McGehee opined that the claimant's social interaction skills were

-8-

moderately limited.  (Tr. 35).  In fact, as stated earlier, Dr. McGehee, in her Medical Source Statement, found that Plaintiff had a markedly limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr. 539).

Finally, the ALJ failed to address Dr. McGehee's conclusion that Plaintiff's GAF was 31, which involves some impairment in reality testing or communication OR a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

Based on the inconsistencies and somewhat confusing conclusions reached by the ALJ in regard to Plaintiff's mental functional ability, the Court finds it necessary to remand this matter so that the ALJ can more fully evaluate and address Plaintiff's mental impairment.  On remand, the ALJ is directed to request Dr. McGehee to complete a Psychiatric Technique Review form and to complete a Mental RFC Assessment.  With this evidence, the ALJ should then re-evaluate Plaintiff's RFC.

## IV.   Conclusion:

Accordingly, the Court concludes that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 3rd day of January, 2011..

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)